The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| QUINSTREET, INC., a California corporation<br><br>Plaintiff,<br><br>v.<br><br>MARK FERGUSON d/b/a WHEW. COM, an individual<br><br>Defendant. | NO. C08-05525-RJB<br><br>PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF |

## I. **INTRODUCTION**

This dispute arises from numerous false and defamatory statements made by Defendant MARK FERGUSON ("Defendant") about Plaintiff QUINSTREET, INC. ("QuinStreet") and posted on various Internet websites that a third person would reasonably understand to mean: (1) QuinStreet engages in illegal business practices; and (2) QuinStreet lied to this Court to avoid liability for engaging in illegal business practices. These false and unprivileged statements were commercial speech made in the course of Defendant selling his whew.com website to encourage the general public to purchase his whew.com website for a minimum bid of $25,000. QuinStreet's reputation has been, and continues to be, irrevocably damaged by Defendant's false and unprivileged statements, which Defendant cannot and does not deny

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 1
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

publishing. Rather, Defendant claims that the statements are true and disputes that QuinStreet's reputation has been damaged.

QuinStreet is represented by John Knox and Todd Sorensen of Williams, Kastner & Gibbs PLLC. Defendant is represented by Robert Siegel of i.JUSTICE LAW, P.C. and Douglas McKinley, Jr. of the Law Office of Douglas McKinley Jr.

## II. STATEMENT OF FACTS

QuinStreet is an online marketing, media, and technology services company that connects targeted consumers with products and services that are relevant and valuable to their lives. QuinStreet provides Internet marketing services for DeVry University and many other prominent clients. By valuing ethical online marketing practices that preserve brand integrity, QuinStreet has become one of the largest online media and marketing companies in the world.

QuinStreet's reputation is critical because its current and prospective clients rely on QuinStreet to comply with federal rules and regulations governing commercial e-mails. For this reason, QuinStreet has a team responsible for CAN-SPAM compliance. As part of that responsibility, the compliance team reviews the content of e-mail advertisements generated by QuinStreet both before and after such advertisements are submitted to its publisher. The compliance team examines the e-mails' "From" and "Subject" lines and text, and also confirms the "unsubscribe links" are functional and that the links inside the creative content hit QuinStreet's landing page. QuinStreet's review does not include a review of the domain from which the email will be sent, as that function is handled entirely by the third party email publisher. Further, QuinStreet conducts regular reviews of its third-party publishers to confirm that they are CAN-SPAM compliant.

On July 27, 2007, Defendant Ferguson, as the plaintiff, filed a civil action in the United States District Court, Western District of Washington, Seattle, Case No. C07-5378RJB, against

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 2
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

various business entities including QuinStreet, alleging damages arising from violations of the Federal CAN-SPAM Act of 2003, 15 U.S.C. §7701 et seq., and the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190.020, and the Washington State Consumer Protection Action ("CPA"), RCW 19.86. (hereinafter referred to as "*Ferguson v. Active Response Group, et. al.*").

In *Ferguson v. Active Response Group, et al*, QuinStreet was represented by this law firm as well as by Stephan A. Barber of RMKB in California. Mr. Barber acted as lead counsel and took Mr. Ferguson's deposition in May 2008. Mr. Barber authored certain pleadings filed with the Court, including an Opposition to Ferguson's discovery motion (denied by the Court) and QuinStreet's Motion for Summary Judgment.

On August 5, 2008, the Court granted QuinStreet's Motion for Summary Judgment and dismissed Defendant's claims against QuinStreet in *Ferguson v. Active Response Group, et. al.* Defendant appealed from the judgment dismissing his complaint and the Ninth Circuit affirmed the dismissal on October 7, 2009. On or about August 23, 2008, Defendant began intentionally posting false and defamatory statements on his whew.com website and the Usenet group news.admin.net-abuse.e-mail bulletin board, including but not limited to the following:

- "We are now battling QuinStreet who is still spamming me after we started suing them. **Their spam violates the CAN SPAM Act of 2003** but the judge figures they don't want to hear these types of cases and have made massive excuses for QuinStreet."
- "The fact is, QuinStreet, Inc., is still spamming me and others even after they were sued. **Their spam violates CAN SPAM; already proven in a court** and it violates in my opinion Washington, California's and every other Consumer Protection Law I have read."
- "Steve Barber has to **lie to defend his client** and since the court is not holding his feet to the fire they are using his lies so they don't have to hear the case."
- "So in the end I have **a dishonest attorney Steve Barber that lies to defend his client QuinStreet**, I have a judge that things these cases are something he doesn't want to hear **and I have business slowly being ruined by so much spam that I am unable to mitigate the damages any further.**"

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 3
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

- "QuinStreet is still spamming for DeVry University and now their attorney Stephan Barber compounds this with threats against me because **he was caught lying to the court.**"
- "The spammer's attorney Steve Barber of RMK in California **continues to lie to the court** and the court does nothing."
- "The truly sad thing is Kraft, Xerox, QuinStreet, Kaplan University [Washington Post], The Journal, and so many other fortune 500 and fortune 100 companies **hire these spammers with knowledge of their actions.**"
- "QuinStreet is looking at about 1.5Mil in damages after this goes to the appeals court and I will be suing each one of their clients like DeVry University, Keller, University and so on. **The next year will be spent identifying all their clients and making that information public so others can sue their clients and them.**"

[Emphasis added.]

QuinStreet is not alleging that Ferguson's statements to the effect that QuinStreet is a "spammer" or "spamming me" are actionable. QuinStreet's claims are based upon Defendant's patently false assertions of fact that cannot possibly be interpreted as an expression of opinion.

Defendant's obviously false statements of fact harmed and continue to harm QuinStreet's reputation, because the general public, including QuinStreet's current and prospective clients, are led to believe QuinStreet sends illegal e-mails that violate CAN-SPAM and lies in court (i.e., commits perjury, which is a felony) to protect its alleged illegal activities. Compliance with federal and state laws governing online commercial marketing is important to QuinStreet's current and prospective clients. Just as QuinStreet performs regular reviews of third-party publishers, QuinStreet's clients (both current and prospective) conduct regular reviews of their third-party online marketing and media companies, such as QuinStreet.

Statements that it has "already been proven in a court" that QuinStreet's e-mail "violates CAN-SPAM" are patently false and injure QuinStreet's business because third parties, including QuinStreet's current and prospective clients, are led to believe that a court has adjudicated that QuinStreet's e-mails violate CAN-SPAM, which is also untrue. Similarly,

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 4
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

QuinStreet is injured by the general public being led to believe that QuinStreet hires unethical lawyers who lie and were "caught lying to the court" in order to defend QuinStreet's interests. These statements are plainly false and were made to convince the average person that QuinStreet will go to any lengths, including committing perjury, to keep its purportedly illegal enterprise operational. DeVry and other household brands that use online advertising to market their products do not want their brand associated with illegal marketing practices or companies who lie to judges to escape liability for illegal marketing.

QuinStreet initially attempted to resolve the matter informally by asking Defendant to stop his injurious conduct. However, Defendant refused and in response published additional false and defamatory statements about QuinStreet. As such, QuinStreet was forced to file a Complaint for Defamation, Intentional Interference with Contractual Relations, and Intentional Interference with Prospective Economic Advantage.[1] In response to QuinStreet's Complaint, Defendant filed various counterclaims against QuinStreet, again alleging violations of CAN-SPAM, CEMA, and CPA laws. After Defendant was given several opportunities to state a valid claim against QuinStreet, the Court dismissed Defendant's counterclaims with prejudice. Therefore, Defendant does not have any claim for affirmative relief.

In anticipation of trial, Defendant made a recent tactical decision to remove all statements about QuinStreet from his website. This is a tacit admission that these statements are defamatory, and Defendant wants the jury believe that his statements no longer cause QuinStreet harm. However, once this trial is over, if Defendant is not enjoined from publishing false and defamatory statements about QuinStreet, he will continue to do so on his website and throughout the Internet.

---

[1] QuinStreet voluntarily dismissed its claim for Intentional Interference with Contractual Relations.

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 5
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

## III. DAMAGES

QuinStreet seeks general damages resulting from the harm caused to QuinStreet's reputation, as well as damages associated with the loss of talented and specialized candidates for employment due to Defendant's false and defamatory statements. QuinStreet is also seeking injunctive relief to prevent Defendant from continuing to publish false and defamatory statements about QuinStreet to third parties.

Time and time again, Defendant has boldly declared that QuinStreet's claims have no merit, mistakenly asserting that QuinStreet has no evidence it was damaged. QuinStreet's damages for defamation are presumed because Defendant's statements are defamatory *per se*. *See Maison de France, L.T.D. v. Mais Oui!, Inc.*, 126 Wn.App. 34-45 (2005), holding that a defamatory statement is defamatory per se if it injures the plaintiff in his or her business, trade, profession, or office. Defendant's statements that QuinStreet sends illegal e-mails that violate federal law clearly injure QuinStreet in its business, trade, and profession. Therefore, as explained in *Robel v. Roundup Corporation*, 103 Wn.App. 75, 93 (2000) (citations omitted),[2] QuinStreet is entitled to substantial damages without actual proof of damages:

> Generally in a defamation action, the plaintiff must present evidence of special or actual damages resulting from the statement. An exception to this rule is libel per se, which permits an award of substantial damages without proof of actual damage.

Similarly, with respect to damages based on QuinStreet's tortious interference claim, harm to reputation is sufficient if such damages are reasonably to be expected from the interference. *See* Restat. 2d of Torts §774A; *See also, Rasor v. Retail Credit Company*, 87 Wn.2d 516, 529 (1976) (citations omitted) holding that "in instances of injury to reputation, personal humiliation, mental suffering, and similar harm 'there need be no evidence which assigns an actual dollar value to the injury.'"

---

[2] Reversed in part on other grounds in *Robel v. Roundup Corp.*, 148 Wn.2d 35 (2002)

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 6
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

## IV. DEFENDANT'S FALSE STATEMENTS CONCERNING QUINSTREET'S ATTORNEY CONSTITUTE DEFAMATION OF QUINSTREET

Defendant's statements that QuinStreet's lawyer lied to the Court and was "caught lying to the court" while defending QuinStreet's illegal activities are false and defamatory statements about QuinStreet. These statements are defamatory per se because they accuse Barber and QuinStreet of committing perjury, a crime, and impute a general disqualification of Barber as a professional attorney.

As a corporation, QuinStreet cannot speak or act. Rather, "[c]orporations speak and act through their agents." *United States v. Thomas*, 52 F. Supp. 571, 592 (E.D. Wash. 1943). It is long standing judicial precedent that exercise of corporate powers and faculties by legal representatives is the recognition of a corporate responsibility for the acts of those representatives. *The Philadelphia, Wilmington, and Baltimore Railroad Co. v. Quigley*, 62 U.S. 202, 210 (1859); *see also* Ninth Circuit Model Civil Jury Instruction 4.2. Washington has adopted the common law rule that "[b]ecause corporations are artificial entities they can only act through their agents,…corporations appearing in court proceedings <u>must be represented by attorney</u>." *Lloyd Enters., Inc. v. Longview Plumbing & Heating Co.*, 91 Wn.App. 697, 701 (1998) (emphasis added).

Since QuinStreet can only act and speak through its attorney in Court, Defendant's statement that QuinStreet's agent was caught lying to the Court to defend QuinStreet's illegal business activities is directly attributable to QuinStreet. Were it not so, then on the one hand QuinStreet could be vicariously liable for a defamatory statement made about Defendant by a corporate representative within the course and scope of his/her agency, but on the other hand, quite inconsistently, Defendant could defame QuinStreet based on the actions of QuinStreet's agents with absolute impunity. When Defendant says that QuinStreet's attorney was caught lying in Court to defend QuinStreet's interests--an act by QuinStreet through its authorized

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 7
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

representative–it is reasonably understood to mean that QuinStreet was caught lying in Court. Such statements also imply to the reasonable person that QuinStreet intentionally retains unethical lawyers to represent it in court proceedings, that QuinStreet directed its attorney to lie to the court, and/or that QuinStreet ratified the alleged lies. Further, since these statements were made at that same time as the other false and defamatory statements about QuinStreet, and in the context of those statements, the statements were clearly intended to defame and injure QuinStreet. Similarly, statements that QuinStreet uses, directs, and/or ratifies the acts of unethical lawyers who lie to defend QuinStreet discourages QuinStreet's current and prospective clients from doing business with QuinStreet.

In fact, one of Defendant's statements on the Internet can reasonably be interpreted as stating that QuinStreet is knowingly using its agent's alleged lies to obtain a wrongful dismissal of Ferguson's prior lawsuit against QuinStreet. Defendant states that Barber lied to the court and that "they are using his lies so that they don't have to hear the case." The first "they" in this statement can be reasonably interpreted as a reference to QuinStreet. Alternatively, it could refer to the court. A reader who believes that the first "they" refers to QuinStreet would necessarily conclude that QuinStreet used the alleged lies to obtain a dismissal of Ferguson's meritorious lawsuit. Therefore, Defendant attributed the attorney's alleged lies directly to QuinStreet.

QuinStreet respectfully submits, in the context of the facts of this particular case, that if the statements concerning QuinStreet's lawyer are defamatory, then QuinStreet has been defamed as a matter of law. At a minimum, it is a question of fact for the jury.

### V. DEFENDANT'S LIABILITY TO QUINSTREET

#### 1. Defamation.

A defamatory statement injures reputation by causing the defamed person to be shunned by others or hurt in business relations. *Right-Price Recreation, L.L.C. v. Connells*

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 8
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

*Prairie Community Council*, 146 Wn.2d 370, 382 (2002). The elements of defamation are: falsity, an unprivileged communication, fault, and damages. QuinStreet is a private figure, and need only show that Defendant knew, or in the exercise of reasonable care, should have known that his statements were false or would create a false impression in some material respect. *Maison de France, Ltd. v. Mais Oui!, Inc.*, 126 Wn.App. 34, 44, 108 P.3d 787 (2005) (citation omitted). Defendant does not deny making these statements and, because the statement constitute defamation per se, damages are presumed. Therefore, the issues are whether the statements are false and/or privileged.

### 2. Defendant's Statements Are Not Privileged.

"Before the truth or falsity of an allegedly defamatory statement can be assessed, a plaintiff must prove the words constituted a statement of fact, not an opinion." *Robel v. Roundup Corp.*, 148 Wn.2d 35, 55 (2002). Defamatory statements concerning facts are actionable, but expressions of opinion are protected under the First Amendment, and are not actionable. *See Id.* (Citations omitted). "To determine whether a statement is actionable, a court should consider at least (1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts." *Id.* at 56, citing *Dunlap v. Wayne*, 105 Wn.2d 529, 539 (1986). A court should also consider "the degree to which the truth or falsity of a statement can be objectively determined without resort to speculation," and "whether ordinary persons...would perceive the statement as an expression of opinion rather than a statement of fact." *Benjamin v. Cowles Pub. Co.*, 37 Wn.App. 916, 923 (1984).

Defendant's statement that it has "already been proven in a court" that QuinStreet's e-mail "violates CAN-SPAM" is a statement of fact. This is not a personal opinion protected by the First Amendment. Indeed, the reader must necessarily conclude that a court has

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 9
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

adjudicated that QuinStreet's e-mails violate CAN-SPAM, which is untrue. Similarly, Defendant's statement that QuinStreet, through Mr. Barber, was "caught lying to the court" is a statement concerning fact, namely that QuinStreet was caught lying to avoid liability for sending illegal e-mails that violate CAN-SPAM. The truth or falsity of these statements can be objectively determined without resort to speculation because this Court can take judicial notice of the fact that the Court did not rule that QuinStreet's e-mails violate CAN-SPAM, and QuinStreet was not caught lying to the Court.

These are not protected opinions, but statements of fact that injure QuinStreet's business relationships and reputation by stating that QuinStreet sends illegal e-mails that a court has adjudicated violate CAN-SPAM and that QuinStreet's attorneys were caught by the court lying to defend QuinStreet's illegal actions. Furthermore, Defendant implies that QuinStreet: (1) hires lawyers whom it knows to be unethical; (2) directed its lawyer to lie about key matters to obtain dismissal of Defendant's meritorious claims; and/or (3) ratified the conduct of its representative.

Some of the statements were made in the context of commercial speech. They were published on the Internet, a global medium of mass communication, to advertise the sale of his whew.com website for more than $25,000. Defendant expressly states that his "domain is for sale now" with "closed bidding starting at $25,000.00." Defendant goes on to explain the rules which include: (1) bidding will remain open until January 1, 2009, (2) prospective buyers can bid more than once; (3) bidders must include their contact information in the event the have the highest bid; and (4) the offers to purchase the domain should be sent to "bidding@whew.com with 'bid for whew.com' in the subject line."

The online advertisement contains additional instructions that the winning bidder deposit the funds in an escrow account and the sale be handled through Defendant's attorney. As part of his attempts to sell his domain, Defendant claims that he has been forced to sell his

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 10
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

whew.com website, in part because of this Court's ruling in *Ferguson v. QuinStreet*. These are unprivileged statements concerning facts that were made in a commercial context in an effort to market and sell Defendant's website to the general public.

3. **Defendant's Statements Are False.**

Defendant cannot dispute his statements that it has "already been proven in a court" that QuinStreet's e-mail "violates CAN-SPAM" and the implication that QuinStreet's customers are aware of its alleged illegal activities are patently false. Similarly, it is a plainly false statement that QuinStreet's attorneys were "caught lying to the court." These statements alone are without question untrue because a court has never ruled that QuinStreet's e-mails violate CAN-SPAM or made a determination that QuinStreet lied in court. Defendant simply has no evidence to support these false and defamatory statements that were made with the intent to, and did, injure QuinStreet in its business by asserting that it has been adjudicated that QuinStreet sent illegal e-mails that violate CAN-SPAM and QuinStreet's attorneys were caught lying to the Court to defend QuinStreet's illegal business activities.

Further, the more general statements that QuinStreet's e-mails violate CAN-SPAM (as opposed to his statements that a court has adjudicated the e-mails violate CAN-SPAM) and QuinStreet lies in court to defend itself (as opposed to his statements that the court caught QuinStreet lying) are demonstrably false. QuinStreet disputes Ferguson's contention that all of the e-mails he relies upon are attributable to QuinStreet. But even assuming Ferguson establishes that some of those e-mails are somehow attributable to QuinStreet, QuinStreet e-mails do not violate CAN-SPAM. As recently explained by the Ninth Circuit, sending commercial e-mails is not illegal. Indeed, the court observed that the "Internet is a unique medium that offers legitimate businesses a low-costs means to promote themselves and their wares and in turn fosters competition in the marketplace. Both consumers and Congress have

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 11
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

come to view e-mail, when fairly employed, as an established and worthwhile devise in the toolbox of accepted marketing practices." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1045 (9th Cir. 2009).

CAN-SPAM "does not ban spam outright, but rather provides a code of conduct to regulate commercial e-mail messaging practices."[3] *Id.* at 1048. CAN-SPAM generally "prohibits such practices as transmitting messages with "deceptive subject headings" or "header information that is materially false or materially misleading." *Id.*, citing 15 U.S.C. § 7704(a)(1), (2). The Ninth Circuit explains further:

> The Act also imposes requirements regarding content, format, and labeling. For instance, unsolicited e-mail messages must include the sender's physical postal address, indicate they are advertisements or solicitations, and notify recipients of their ability to decline further mailings. 15 U.S.C. § 7704(a)(5). Moreover, in order to comply with the Act, each message must have either a functioning return e-mail address or a comparable mechanism that allows a recipient to "opt out" of future mailings. 15 U.S.C. § 7704(a)(3).

*Id.*

Defendant has produced in discovery thousands of pages of largely unreadable code that purport to support his defense that QuinStreet's e-mails violate CAN-SPAM. These e-mails and any testimony concerning them have no relevance and are not a defense to Defendant's statements that a court has ruled that QuinStreet violates CAN-SPAM, that its customers are aware of its illegal activities, that QuinStreet lied to the court, or that QuinStreet was caught lying.

Defendant claims he has received QuinStreet e-mails that violate CAN-SPAM because QuinStreet is not identified as the sender of the e-mail. However, as a matter of practice QuinStreet, its third-party publishers, or the clients are identified in the from line,

---

[3] The court found that "spam" in this context does not have a precise definition, but is typically understood to refer broadly to unsolicited e-mail messages that are commercial in nature. *Id.* at 1045, fn 1.

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 12
(C08-05525-RJB)

depending on whether the e-mail is from QuinStreet, its client, or a third-party publisher. QuinStreet includes information so that the recipient can contact QuinStreet, its third publishers, or the client itself to opt out of receiving e-mails. Defendant's hyper-technical and confusing argument has already been squarely addressed and rejected by *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). The *Omega World* court held that such an analysis puts form over function and subverts the purpose and intent of CAN-SPAM, which prohibits "materially false or misleading" e-mails, not hyper-technical violations that are not misleading.

In *Omega World*, the court held that an e-mail is not materially false or misleading if the original initiator of the e-mail message can be easily ascertained from the header or e-mail itself. *Id.* at 358. In *Omega*, the defendant sent e-mail advertisements to the plaintiff with headers that included non-functional "from" addresses and incorrectly identified the server from which its e-mail originated. *Id.* at 357. However, each of the e-mails contained a link the recipient could click on as well as a postal address the recipient could write to in order to be removed from future mailings. The district court ruled and the Fourth Circuit affirmed that the inaccuracies in the e-mails did not make them materially false or misleading:

> We agree with the district court that these inaccuracies do not make the headers "materially false or materially misleading." *Id.* § 7704(a)(1). The e-mails at issue were chock full of methods to "identify, locate, or respond to" the sender or to "investigate [an] alleged violation" of the CAN-SPAM Act. *Id.* § 7704(a)(6). Each message contained a link on which the recipient could click in order to be removed from future mailings, in addition to a separate link to Cruise.com's website. Each message prominently displayed a toll-free number to call, and each also listed a Florida mailing address and local phone number for the company.

*Id.* at 357.

Like the e-mails in *Omega World*, QuinStreet's e-mails are "chock full of methods to 'identify, locate, or respond to' the sender." Each e-mail contains a link on which the recipient

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 13
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

could click in order to be removed from future mailings. The e-mails contain a link to the publisher's website. Further, all of the e-mails contained a physical postal mailing address the recipient can use to request to be removed from future e-mails. Finally, each of the e-mails are clearly identified as advertisements and promote the product they are advertising. The Fourth Circuit's conclusion is directly on point:

> If the alleged inaccuracies in a message containing so many valid identifiers could be described as "materially false or materially misleading," we find it hard to imagine an inaccuracy that would not qualify as "materially false or materially misleading." Congress' materiality requirement would be rendered all but meaningless by such an interpretation.

*Id.* at 357.

Any QuinStreet e-mails are not materially false or misleading because they contain numerous valid identifiers that plaintiff could have used to contact the client, the publisher, or QuinStreet. As such, the e-mails do not violate CAN-SPAM because they are not materially false or misleading. Despite the various methods available to Defendant to locate the sender and opt-out of receiving future e-mails, Defendant has previously admitted he does not use the opt out link to request removal from future mailings and has never contacted the publisher or QuinStreet to be removed from future mailings.

Further, as evidenced by his refusal to produce the e-mails in a readable form (how a typical recipient would view an e-mail on their computer screen), Defendant has purposely disabled his—and our—ability to see the entire e-mail, thereby obscuring information relating to the e-mail's point of origin. As such, Defendant himself is obscuring the valid contact information that was contained in the e-mails in an effort to confuse the jury into believing the e-mails do not contain valid identifiers required by CAN-SPAM.

QuinStreet's reputation has been and continues to be a key factor in developing and retaining its current and prospective clients. Defendant's statements are defamatory per se

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 14
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

because they serve only to damage QuinStreet's goodwill, reputation, and business relations. QuinStreet's current and prospective clients require that the integrity of their brand name be maintained through ethical and legal online marketing. By making statements that QuinStreet and its clients utilize illegal spam e-mail to market their products and services, Defendant's statements damage QuinStreet's goodwill, reputation, and business relations.

4. **Intentional Interference with Prospective Economic Advantage.**

The elements of a cause of action for intentional interference with prospective economic advantage are: (1) plaintiff had a relationship with others contemplating a contract with at least a reasonable expectation of fruition; (2) the relationship was known or reasonably apparent to the defendant; and (3) defendant's intentional interference disrupts the relationship. *King v. Seattle*, 84 Wn.2d 239, 247 (1974) (overruled in part on other grounds in *Nielson v. Eisenhower & Carlson*, 100 Wn. App. 584 (2000)). With respect to damages, harm to reputation is sufficient if the harm is reasonably to be expected from the interference. *See* Restat. 2d of Torts §774A; *See also, Rasor v. Retail Credit Company*, 87 Wn.2d 516 (1976) (citation omitted) holding that "in instances of injury to reputation, personal humiliation, mental suffering, and similar harm 'there need be no evidence which assigns an actual dollar value to the injury.'"

As discussed above, Defendant knew that QuinStreet had an economic relationship with third parties who contracted with QuinStreet to provide legal and ethical online marketing services that preserve brand integrity and whose future relationships with QuinStreet is an economic benefit or advantage to QuinStreet. Defendant intentionally interfered with these relationships by making public statements on the Internet that a reasonable person would understand to mean that: (1) A court has determined that QuinStreet sends illegal e-mails that violate CAN-SPAM; and (2) QuinStreet was caught lying to the

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 15
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

court in order to avoid liability for engaging in illegal business practices. These intentionally false and malicious statements damage QuinStreet's reputation, goodwill, and current and future business relations.

## VI. QUINSTREET WILL REQUEST THE COURT ISSUE A PERMANENT INJUNCTION AGAINST DEFENDANT

At the conclusion of the jury phase of the trial, QuinStreet will request the Court issue a permanent injunction prohibiting Plaintiff from posting false or defamatory statements about QuinStreet. Injunctive relief against threatened conduct is appropriate where money damages cannot compensate the plaintiff for the resulting harm. *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1334-1335 (9th Cir. 1995). A "substantial loss of business" absent injunctive relief shows "irreparable injury." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975); *See also Grand River Enterprise Six Nations, Ltd. V. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007), holding that a loss of current or future market share may constitute irreparable harm.

Similarly, a threatened loss of prospective customers or goodwill constitutes irreparable harm supporting an injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001). This is because damage to the goodwill of a business is often difficult to calculate, thus supporting a finding of irreparable injury. *Rent-A-Center, Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir. 1991). Finally, damage to one's reputation may also be an irreparable injury because compensatory damages would be uncertain or inadequate. *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002).

Here, QuinStreet will suffer irreparable harm if Defendant is permitted to make false and defamatory statements about QuinStreet. His prior false statements were intentionally made to harm QuinStreet, its reputation, and its current and future business relations. The loss of or damage to QuinStreet's reputation as an ethical and legal online marketing company will cause incalculable injury to QuinStreet through a substantial loss of its current and prospective

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 16
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

clients. Additionally, Defendant's conduct is causing irreparable injury to QuinStreet's goodwill, which has been developed through time, energy, and resources spent on assuring that its own marketing practices comply with CAN-SPAM. This is a substantial asset of QuinStreet's business because QuinStreet's clients value brand integrity and do not want their brand associated with illegal and unethical marketing practices. In sum, such potential irreparable harm to QuinStreet warrants injunctive relief.

## VII. CONCLUSION

QuinStreet has given Defendant numerous opportunities to make amends for his defamatory and injurious statement. Defendant's unreasonable insistence upon publishing false and defamatory statements that injure QuinStreet's current and prospective business made it necessary to resolve this issue at trial. Further, at the conclusion of the jury phase of the trial, QuinStreet will request appropriate permanent injunctive relief from the Court.

Dated this 9th day of October, 2009.

s/Todd R. Sorensen, WSBA #35403
John A. Knox, WSBA #12707
Todd R. Sorensen, WSBA #35403
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone: (206) 628-6600
Fax: (206) 628-6611
E-mail:jknox@williamskastner.com
E-mail:tsorensen@williamskastner.com
Attorneys for Plaintiff

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 17
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2638386.1

## CERTIFICATE OF SERVICE

I certify that, on October 9, 2009, I caused the foregoing to be filed via the CM/ECF system which will result in a copy being sent to Defendant's counsel, set forth below:

Robert J. Siegel, Esq.  
I.JusticeLaw, PC  
P. O. Box 25817  
Seattle, WA 98165-1317  
bob@ijusticelaw.com

Douglas E. McKinley, Jr., Esq.  
Law Office of Doug McKinley  
P. O. Box 202  
Richland, WA 99352  
doug@mckinleylaw.com

DATED this 9th day of October, 2009.

s/Todd R. Sorensen, WSBA #35403  
WILLIAMS, KASTNER & GIBBS PLLC  
601 Union Street, Suite 4100  
Seattle, WA 98101-2380  
Telephone: (206) 628-6600  
Fax: (206) 628-6611  
E-mail:tsorensen@williamskastner.com

Attorneys for Plaintiff

PLAINTIFF QUINSTREET, INC.'S TRIAL BRIEF- 18
(C08-05525-RJB)

Williams, Kastner & Gibbs PLLC  
601 Union Street, Suite 4100  
Seattle, Washington 98101-2380  
(206) 628-6600

2638386.1